# In the United States Court of Federal Claims

No. 19-1964C
Filed:  January 13, 2021
NOT FOR PUBLICATION

| | |
|---|---|
| ROBERT L. DOYON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

RCFC 12(b)(1); Subject-Matter
Jurisdiction; RCFC 12(b)(6); Failure To
State A Claim; Military Pay Act; 10
U.S.C. § 204; Military Disability
Retirement Pay Act; 10 U.S.C. § 1201.

*Nathaniel McPherson*, Counsel of Record, Latham & Watkins, Boston, MA, for plaintiff.

*Jana Moses*, Trial Attorney, *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Ethan P. Davis*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Lt. Clayton McCarl*, Litigation Attorney, United States Navy, JAG Corps, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiff, Robert L. Doyon, brings this military pay action challenging the Board for Correction of Naval Records' ("BCNR") decision to deny his application for the correction of his military records to reflect that he was unfit for duty and medically retired for psychosis or psychoneuroses associated with post-traumatic stress disorder ("PTSD").  *See generally* Compl. As relief, plaintiff seeks, among other things, an order that his military records be corrected, military disability retirement pay and other pay.  *Id.* at Prayer for Relief.

The government has moved to dismiss this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims ("RCFC").  *See generally* Def. Mot.  The parties have also filed cross-motions for judgment upon the administrative record, pursuant to RCFC 52.1.  *See generally id.*; Pl. Mot.  In addition, plaintiff has moved to

supplement the administrative record.  Pl. Mot. to Supp.  For the reasons set forth below, the Court:  (1) **GRANTS-in-PART** the government's motion to dismiss; (2) **DENIES** plaintiff's motion to supplement the administrative record; (3) **GRANTS** the government's motion for judgment upon the administrative record; and (4) **DENIES** plaintiff's cross-motion for judgment upon the administrative record.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

Plaintiff, Robert L. Doyon, is a former service member in the United States Navy ("Navy").  Compl. at ¶ 2.  In this military pay action, plaintiff challenges the BCNR's decision to deny his application for the correction of his military records to reflect that he was unfit for duty and medically retired for psychosis or psychoneuroses associated with PTSD.  *Id.* at ¶ 6.

Specifically, plaintiff asserts three counts against the government in the complaint.  First, plaintiff alleges in Count I of the complaint that the BCNR's alleged refusal to apply applicable Department of Defense guidance in considering his application for the correction of his military records was arbitrary, capricious, an abuse of discretion and contrary to law.  *Id.* at ¶¶ 70-75. Second, plaintiff alleges in Count II of the complaint that the BCNR's rejection of his application for the correction of his military records was arbitrary, capricious, unsupported by substantial evidence and contrary to law.  *Id.* at ¶¶ 76-78.   Lastly, plaintiff alleges in Count III of the complaint that the BCNR failed to afford him procedural due process in violation of the Due Process Clause of the Fifth Amendment to the Constitution.  *Id.* at ¶¶ 79-89.  As relief, plaintiff seeks, among other things, an order that his military records be corrected, military disability retirement pay and other pay.  *Id.* at Prayer for Relief.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); the administrative record ("AR"); the government's motion to dismiss and motion for judgment upon the administrative record ("Def. Mot."); plaintiff's response and opposition to the government's motion to dismiss and cross-motion for judgment upon the administrative record ("Pl. Mot."); plaintiff's motion to supplement the administrative record ("Pl. Mot. to Supp."); the government's response and opposition to plaintiff's cross-motion for judgment upon the administrative record and plaintiff's motion to supplement the administrative record and reply in support of its motion to dismiss and motion for judgment upon the administrative record ("Def. Resp."); and plaintiff's reply in support of his cross-motion for judgment upon the administrative record and motion to supplement the administrative record ("Pl. Reply").  Except where otherwise noted, all facts recited herein are undisputed.

### 1.       Plaintiff's Military Service And Discharge

As background, plaintiff is a Vietnam War veteran who served in the Navy from March 17, 1966, to November 21, 1968. *Id.* at ¶¶ 2, 17; AR 0054. During his military service, plaintiff was assigned to the U.S.S. *Intrepid* and he advanced to the rank of Airman. Compl. at ¶¶ 18-19. Plaintiff received several medals and commendations—including the Vietnam Service Medal (Bronze Star), the Vietnam Campaign Medal, and the National Defense Service Medal—during his service in the Navy. *Id.* at ¶ 20.

On July 29, 1967, a missile on an airplane located on the U.S.S. *Forrestal* accidently detonated causing an explosion and fire that eventually resulted in more than 130 deaths and 160 injuries. *Id.* at ¶¶ 2, 23. Plaintiff witnessed the immediate aftermath of the explosion and fire. *Id.*

On October 23, 1967, four members of the U.S.S. *Intrepid* went Absent without Leave ("AWOL"). *Id.* at ¶ 24. Because plaintiff was friendly with two of the deserters, he was harassed and threatened by his shipmates. *Id.* In April 1968, plaintiff's parents wrote to Senator Edward Kennedy, to express concerns about his mental health. *Id.* at ¶ 25.

In May 1968, plaintiff went on unauthorized absence for two days. *Id.* at ¶ 26. Upon his return to the *Intrepid,* plaintiff was referred to the ship's sick bay because of his "inability to get along with his peers, his recent mental agitation and deteriorating work habits, and his expression of admiration for several of 1967's famous four deserters." *Id.* at ¶ 28 After being admitted to sick bay, plaintiff was sedated with Thorazine. *Id.*

On August 16, 1968, plaintiff was transferred to Naval Base Subic Bay for further evaluation. *Id.* at ¶ 29. Plaintiff returned to duty aboard the *Intrepid* on August 31, 1968. *Id.* at ¶ 32. A medical evaluation performed at Subic Bay in August 1968 diagnosed plaintiff with "passive aggressive personality disorder." *Id.* at ¶ 30. Thereafter, on September 23, 1968, plaintiff witnessed a fatal plane crash while on duty. *Id.* at ¶ 36.

On September 26, 1968, plaintiff's commanding officer recommended that the Navy separate him from military service for unsuitability citing his diagnosis of passive aggressive personality disorder. AR0231-32. A subsequent psychiatric evaluation conducted on October 28, 1968, changed plaintiff's diagnosis to "Emotionally Unstable Personality #3210, with noted

paranoid trait in his personality."  Compl. at ¶ 38.  And so, plaintiff was discharged with an honorable characterization of service for unsuitability effective on November 21, 1968. AR0054.

### 2.    Plaintiff's VA Benefits Claim

In December 2013, plaintiff filed an application for disability compensation with the Department of Veterans Affairs ("VA") for PTSD.  AR0356.  In connection with this application, a VA psychiatrist diagnosed plaintiff with PTSD in June 2014.  AR0064.  The VA psychiatrist opined that plaintiff had experienced stressors in service, including witnessing a fatal plane crash and a sinking ship incident that resulted in multiple casualties.  AR0067, AR0072. And so, on September 16, 2014, the VA granted plaintiff's application for disability compensation for PTSD, assigning a 50 percent disability rating effective December 9, 2013. AR0088-091.  On November 18, 2015, the VA granted plaintiff's claim for an increased rating for his service-connected PTSD, assigning a 70 percent disability rating effective August 27, 2015.  AR0093-096.

### 3.    The Hagel And Kurta Memoranda

On September 3, 2014, former Secretary of Defense Charles Hagel issued a memorandum entitled "Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder" (the "Hagel Memorandum").  AR0184-187.  The Hagel Memorandum recognizes the attention that "has been focused upon the petitions of Vietnam veterans to Military Department Boards for Correction of Military/Naval Records (BCM/NR) for the purposes of upgrading their discharges based on claims of previously unrecognized Post Traumatic Stress Disorder (PTSD)."  AR0184.  The Hagel Memorandum also states that its purpose is to "help ensure consistency across the Services," by providing supplemental policy guidance for military correction boards on such applications.  *Id.*

In this regard, the Hagel Memorandum requires that military boards give liberal consideration to petitions submitted by veterans who assert that PTSD or PTSD-related conditions "might have mitigated the misconduct that caused [their] under other than honorable conditions characterization of service."  AR0186.  The Hagel Memorandum also directs the military correction boards to timely consider these petitions and to liberally waive any time

limits that may have prevented their review.  *Id.*  In 2016, this "liberal consideration" standard was codified into law and military review boards must review with liberal consideration a veteran's claim "that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the claimant's discharge or dismissal."  10 U.S.C. § 1552(h)(2)(B); 10 U.S.C. § 1553(d)(3)(A)(ii).

On August 25, 2017, Undersecretary of Defense Anthony Kurta issued a memorandum (the "Kurta Memorandum") which provides additional guidance clarifying and expanding upon the Hagel Memorandum, to include veterans' mental health as well as victimization by sexual assault and sexual harassment as potential mitigation for misconduct.  AR0892-897. Specifically, the Kurta Memoranda provides that "[l]iberal consideration will be given to veterans petitioning for discharge relief when the application for relief is based in whole or in part on matters relating to mental health conditions, including PTSD; TBI; sexual assault; or sexual harassment."  AR0893.  The Kurta Memorandum also states that "[u]nless otherwise indicated, the term 'discharge' includes the characterization, narrative reason, separation code, and re-enlistment code."  AR0895.  In addition, the Kurta Memorandum makes clear that "[t]hese guidance documents are not limited to Under Other Than Honorable Condition discharge characterizations but rather apply to any petition seeking discharge relief including requests to change the narrative reason, re-enlistment codes, and upgrades from General to Honorable characterizations."  *Id.*

### 4.    The BCNR's Decision

On September 14, 2017, plaintiff applied for the correction of his military records with the BCNR.[2]  AR0020-21.  In the brief supporting his application, plaintiff requested that the

---

[2] Under 10 U.S.C. § 1552, the Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.  10 U.S.C. § 1552(a).  Former members of the Armed Forces may bring a claim for review of a discharge or dismissal based upon matters relating to post-traumatic stress disorder or traumatic brain injury under Section 1552.  10 U.S.C. § 1552(h).  In such cases, a military board must review the medical evidence that is presented by the claimant and review with liberal consideration the veteran's claim that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge or dismissal, or to the original characterization of the claimant's discharge or dismissal.  10 U.S.C. § 1552(h)(2)(B); *see also* 10 U.S.C. § 1553(d)(3)(A)(ii).

BCNR correct his military records to reflect that he was unfit and medically retired with at least a 30% disability rating for psychosis or psychoneurosis.  AR0045-047.

To support his petition, plaintiff submitted a psychiatric evaluation report authored by his psychiatrist, Dr. Ted R. Greenzang.  AR0375-391.  In this report, Dr. Greenzang opines that plaintiff was experiencing manifestations of PTSD at the time of his discharge from the military.  AR0389.  Dr. Greenzang also opines that plaintiff's medical history was not consistent with a diagnosis of a personality disorder.  *Id.*  And so, Dr. Greenzang concludes in his report that plaintiff's separation from the Navy for unsuitability was "not an appropriate disposition."  AR0390-391.

The BCNR also considered two advisory opinions that were prepared for its consideration:  (1) a September 20, 2018, advisory opinion prepared by the Senior Medical (Psychiatric) Advisor ("SMA") and (2) a September 24, 2018, advisory opinion prepared by the Director of the Secretary of the Navy, Council of Review Boards.  AR0002; AR004-009.

In the September 20, 2018, advisory opinion, the SMA considered several documents, including plaintiff's military medical records, an April 1967 correspondence from plaintiff's commanding officer denying plaintiff's request for advanced schooling, a September 1968 discharge recommendation, an October 1968 psychiatric clinical note, and the VA's rating decisions regarding plaintiff's VA benefits claims.  AR0004-0008.  Based upon this evidence, the SMA recommended the denial of plaintiff's petition, because:  (1) plaintiff's PTSD diagnosis was not part of the then-existing American Psychiatric Association Diagnostic and Statistical Manual ("DSM") II (1968) and the PTSD diagnosis was not officially recognized until the publication of the DSM III (1980) twelve years later and (2) the diagnoses most closely resembling PTSD in the DSM II compensable by Department of Defense Physical Evaluation Board action were known as "Psychoses and Psychoneuroses," neither of which were applied to plaintiff's clinical presentation in 1968.  AR0008.

The SMA also determined that there was no indication that plaintiff had ever complained of symptoms directly related to in-service stressors.  AR0007.  Rather, the SMA found that plaintiff had "demonstrated problems adjusting to the Navy prior to either of th[o]se tragic events."  *Id.*  In addition, the SMA observed that "[r]etrospective subjective accounts occurring remote from an applicant's active service are of significantly less probative value with respect to

6

determining fitness contemporary with a given period of active duty." AR0008. And so, the SMA recommended the denial of plaintiff's petition. *Id*.

The September 24, 2018, advisory opinion prepared by the Director of the Secretary of the Navy, Council of Review Boards reached a similar conclusion. Specifically, the September 24, 2018, advisory opinion states that plaintiff's military record contains:

> [a] preponderance of objective evidence supporting the existence of significant adjustment difficulties beginning prior to the applicant's enlistment and evolving into attitudinal and behavioral issues in conflict with the requirements of military service prior to the two exposures to psychological trauma which later occurred.

AR0009.

The BCNR also considered a memorandum prepared by Dr. Greenzang in response to the SMA's advisory opinion. AR0766-772. In that memorandum, Dr. Greenzang opines that the advisory opinion "failed in multiple regards to provide an adequate evaluation of Mr. Doyon's condition, . . . [and it] led [Dr. Greenzang] to conclude that [Mr. Doyon] suffers from PTSD, which existed during and stems from his experiences in the Navy." AR0767.

The BCNR issued a decision denying plaintiff's petition on November 20, 2018. AR0001-003. In its denial decision, the BCNR waived the statute of limitations under 10 U.S.C. § 1552(b) and resolved plaintiff's disability retirement claim on the merits without conducting an in-person hearing. AR0001-002. In doing so, the BCNR "substantially concurred" with the September 20, 2018, and September 24, 2018, advisory opinions. AR0002.

Specifically, the BCNR concluded that insufficient evidence of unfitness for continued Naval service due to psychosis or psychoneurosis existed in the evidentiary record. *Id*. In this regard, the BCNR found that, among other things, "there was no evidence of recurrent psychotic episodes, or a single well-established psychotic episode with existing symptoms or residuals sufficient to interfere with performance of duty." *Id*.

The BCNR also declined to afford substantial weight to the VA's disability ratings, or to Dr. Greenzang's medical opinion. *Id*. In this regard, the BCNR determined that the more recent diagnoses of PTSD, although uncontested by the BCNR, "were made too distant in time from 1968 to be probative of [plaintiff's] fitness for continued Naval service in 1968." *Id*. The BCNR

also observed that there was "more than enough evidence [in plaintiff's military record] of behavior consistent with a personality disorder to support the diagnosis made in 1968." *Id.* And so, the BCNR concluded that "insufficient evidence of error or injustice exists to warrant a change to [plaintiff's military] record." *Id.*

Plaintiff commenced this action challenging the BCNR's decision on December 27, 2019. *See generally* Compl.

### C.      Procedural Background

Plaintiff filed the complaint in this military pay matter on December 27, 2019. *Id.* On May 27, 2020, the government filed a motion to dismiss this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted and a motion for judgment upon the administrative record, pursuant to RCFC 12(b)(1) and (6), and RCFC 52.1. *See generally* Def. Mot.

On June 24, 2020, plaintiff filed a response and opposition to the government's motion to dismiss and a cross-motion for judgment upon the administrative record. *See generally* Pl. Mot. On June 24, 2020, plaintiff also filed a motion to supplement the administrative record. *See generally* Pl. Mot. to Supp.

On July 15, 2020, the government filed a reply in support of its motion to dismiss and motion for judgment upon the administrative record, and a response and opposition to plaintiff's cross-motion for judgment upon the administrative record and motion to supplement the administrative record. *See generally* Def. Resp. On August 5, 2020, plaintiff filed a reply in support of his motions. *See generally* Pl. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.      RCFC 12(b)(1) And Military Pay Cases

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1). But, plaintiff bears the burden of establishing subject-matter jurisdiction and he must do so by a

preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Specifically, the Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act is, however, "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (citation omitted). And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003). "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)) (brackets existing).

The Military Pay Act and the Military Disability Retirement Pay Act are such money-mandating sources of law. 37 U.S.C. § 204; 10 U.S.C. § 1201; *see also Bias v. United States*, 131 Fed. Cl. 350, 354 (2017), *aff'd in part and rev'd in part*, 722 F. App'x 1009 (Fed. Cir. 2018) ("[T]he Military Pay Act, 37 U.S.C. § 204, is a money-mandating source of law that provides the [C]ourt with jurisdiction."); *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005) (holding that 10 U.S.C. § 1201 is a money-mandating statute). Under the Military Pay Act,

members of a uniformed service are entitled to the basic pay of the pay grade to which they are assigned, or distributed, in accordance with their years of service.  37 U.S.C. § 204(a).  And so, the United States Court of Appeals for the Federal Circuit has recognized that the Military Pay Act "provides for suit in [this Court] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay."  *Antonellis v. United States*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (quoting *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004)).  The Military Disability Retirement Pay Act governs military retirement for disability.  10 U.S.C. § 1201; *see also Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005).  The Act provides that "upon the Secretary's determination that a service member is 'unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay,' the service member may retire for disability."  *Chambers*, 417 F.3d at 1223; 10 U.S.C. § 1201(a).

This Court has also held that a claim must be justiciable to survive a motion to dismiss.  *See Houghtling v. United States*, 114 Fed. Cl. 149, 156–57 (2013).  In this regard, the United States Supreme Court has held that justiciability depends upon "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded."  *Baker v. Carr*, 369 U.S. 186, 198 (1962); *see also Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993).  And so, a controversy is justiciable only if "it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'"  *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988) (quoting *Greene v. McElroy*, 254 F.2d 944, 953 (D.C. Cir. 1958)); *see also Antonellis*, 723 F.3d at 1334; *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995).

The question of justiciability is frequently at issue when courts review military activities, and courts have often held that decisions made by the military are "beyond the institutional competence of courts to review."  *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("Because 'decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments,' . . . the substance of such decisions, like many other judgments committed to the discretion of government officials, is frequently beyond the institutional competence of courts to review.") (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)); *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953) ("[J]udges are not given the task of

running the Army."); *see also Murphy*, 993 F.2d at 872; *Voge*, 844 F.2d at 780.  But, even when the merits of a military personnel decision are nonjusticiable, the process by which the decision has been made may be subject to judicial review.  *Adkins*, 68 F.3d at 1323 ("[A] challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy.") (emphasis original); *Murphy*, 993 F.2d at 873.  And so, if the military chooses to introduce its own procedural regulations, the Court may review any violations of such regulations even if the underlying decision is nonjusticiable.  *Murphy*, 993 F.2d at 873.  In such circumstances, the Court "merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard."  *Id.*

### B.   RCFC 12(b)(6)

When deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), this Court similarly assumes that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor.  *See Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017) (citing *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014)).  And so, to survive a motion to dismiss pursuant to RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint.  *Iqbal*, 556 U.S. at 678 (citation omitted).  On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based upon these facts, to find against the defendant.  *Id.* at 678-79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### C.   RCFC 52.1

Unlike a summary judgment motion under RCFC 56, the existence of a genuine issue of material fact does not preclude a grant of judgment upon the administrative record under RCFC 52.1.  *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011).  Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based

on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006); *see also Bannum v. United States*, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005).

In this regard, judicial review in military pay cases is generally limited to the administrative record that was before a military board. *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). The Court will not disturb the decisions of military boards unless the decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998); *Koretsky v. United States*, 57 Fed. Cl. 154, 158 (2003). Given this, the Court does not reweigh the evidence in reviewing board decisions. *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Rather, the Court considers whether the conclusions of the board are supported by substantial evidence. *Id.* And so, the Court does not substitute its judgment for that of the board when reasonable minds could reach different conclusions based upon the same evidence. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986).

### D.    Supplementing The Administrative Record

Lastly, the Federal Circuit held in *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009), that the "parties' ability to supplement the administrative record is limited" and that the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379-81; *see also Caddell Constr. Co. v. United States*, 111 Fed. Cl. 49, 93 (2013). The Federal Circuit has also recognized that the Supreme Court held in *Camp v. Pitts* that "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). This focus is maintained to prevent courts from using new evidence to "convert the arbitrary and capricious standard into effectively de novo review." *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 671 (2009) (internal quotation marks omitted); *see also Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000). And so, this Court has interpreted the Federal Circuit's directive in *Axiom* to mean that supplementation of the administrative record is permitted to correct mistakes and fill gaps, but is not permitted when the documents proffered are unnecessary for an effective review of the government's decision. *L-3 Commc'ns EOTech, Inc.*, 87 Fed. Cl. at 672.

## IV.    LEGAL ANALYSIS

The government has moved to dismiss this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(1) and (6), upon the grounds that the Court does not possess jurisdiction to consider plaintiff's due process claim and that the remaining claims in the complaint should be dismissed because plaintiff is not entitled to the requested relief.  Def. Mot. at 12-16.

The parties have also filed cross-motions for judgment upon the administrative record, pursuant to RCFC 52.1.  *See generally id.*; Pl. Mot.  The government argues in its motion for judgment upon the administrative record that the BCNR's decision to deny plaintiff's application to correct his military records was reasonable and supported by substantial evidence, because the BCNR applied the appropriate legal standards and adequately considered plaintiff's evidence and claims.  *Id.* at 16-26.  Plaintiff counters in his cross-motion for judgment upon the administrative record that he has alleged plausible claims in the complaint, and he argues that the record evidence in this case shows that the BCNR's decision to deny his application was arbitrary, capricious, not supported by substantial evidence and contrary to law.  Pl. Mot. at 22-50.  In addition, plaintiff has moved to supplement the administrative record with several documents about the drug Thorazine.  *See generally* Pl. Mot. to Supp.

For the reasons set forth below, a careful review of the complaint and the administrative record shows that the Court does not possess subject-matter jurisdiction to consider plaintiff's due process claim.  Plaintiff also has not shown that supplementing the administrative record is warranted in this military pay case.  In addition, the administrative record also makes clear that the BCNR complied with applicable law in considering plaintiff's application to correct his military records and that the BCNR's decision to deny plaintiff's application was reasonable and supported by substantial evidence.  And so, the Court:  (1) **GRANTS-in-PART** the government's motion to dismiss; (2) **DENIES** plaintiff's motion to supplement the administrative record; (3) **GRANTS** the government's motion for judgment upon the administrative record; and (4) **DENIES** plaintiff's cross-motion for judgment upon the administrative record.

### A.    The Court Grants-In-Part The Government's Motion To Dismiss

As a preliminary matter, the government persuasively argues that the Court should dismiss plaintiff's due process claim for lack of subject-matter jurisdiction.  It is well-established that this Court does not possess subject-matter jurisdiction to consider claims based upon the due process clauses of the Fifth or Fourteenth Amendments, because these constitutional provisions are not money-mandating.  *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed Cir. 1995) (finding that the due process and equal protection clauses of the Fourteenth Amendment do not constitute "a sufficient basis for jurisdiction because they do not mandate payment of money by the government"); *see also Quailes v. United States*, 25 Cl. Ct. 659, 664, *aff'd*, 979 F.2d 216 (Fed. Cir. 1992) (quoting *Mullenberg v. United States*, 857 F.2d 770, 772-73 (Fed. Cir. 1988)) ("This court does not have jurisdiction ... because neither the due process or equal protection clauses of the Constitution 'obligate the United States to pay money damages.'"); *McCullough v. United States*, 76 Fed. Cl. 1, 4 (2006) ("[T]he Fifth Amendment is not a source that mandates the payment of money to plaintiff."); *James v. Caldera*, 159 F.3d 573, 581 (Fed. Cir. 1998).  In this case, plaintiff alleges in Count III of the complaint that the BCNR failed to afford him procedural due process in violation of the Due Process Clause of the Fifth Amendment.  Compl. at ¶ 83-85.  The Court may not consider plaintiff's constitutional law claim because it is not based upon a money-mandating source of law.  *LeBlanc,* 50 F.3d at 1028.  And so, the Court must dismiss this claim for lack of subject-matter jurisdiction.  RCFC 12(b)(1).

The government's argument that the Court should also dismiss the remaining claims in this case for failure to state a claim upon which relief can be granted is less persuasive.  The government argues that the Court should dismiss Counts I and II of the complaint, because plaintiff is not entitled to the relief that he seeks in those claims—namely, a 30% disability rating, disability retirement pay and placement on the permanent disability retirement list.  Def. Mot. at 14-16; Def. Resp. at 3-4.  In this regard, the government contends that plaintiff would not be entitled to such relief—even if the Navy were to change his medical diagnosis to psychoneurosis—because such a diagnosis would not necessarily mean that plaintiff was unfit for duty.  Def. Mot. at 16.

The government's argument is, at bottom, an argument about the nature of the relief that the Court may award to plaintiff should the Court determine that the BCNR erred in denying

plaintiff's application to correct his military records.  Because this issue is more appropriately addressed within the context of the parties' cross-motions for judgment upon the administrative record, and the complaint contains well-pleaded factual allegations to support plaintiff's claims in Counts I and II of the complaint, the Court declines to dismiss these claims for failure to state a claim upon which relief can be granted.  RCFC 12(b)(6).

### B.    Supplementing The Administrative Record Is Not Warranted

The Court also declines to supplement the existing administrative record in this military pay case with information about the drug Thorazine.  Plaintiff seeks to supplement the administrative record with:  (1) a National Center for Biotechnology Institute study describing the use and effects of Thorazine (Chlorpromazine); (2) two Thorazine advertisements; and (3) a June 2, 2013, scientific article by the Science History Institute describing the impact of Thorazine on the treatment of mental illness.  *See generally* Pl. Mot. to Supp.  The Federal Circuit has long recognized that judicial review in military pay cases is generally limited to the administrative record that was before a military board.  *Metz v. United States*, 466 F.3d 991, 998-99 (Fed. Cir. 2006).  As the government correctly observes in its opposition to plaintiff's motion to supplement, the existing administrative record contains all of the documents that provided the factual, procedural and legal predicate for the BCNR's decision to deny plaintiff's application to correct his military records.  Def. Resp. at 12-13; *see generally* AR.  Given this, supplementation of the administrative record with the aforementioned documents is not warranted and the Court **DENIES** plaintiff's motion.[3]

### C.    The BCNR's Decision Was In Accordance
### With Law And Supported By Substantial Evidence

Turning to the merits of plaintiff's claims, the administrative record shows that the BCNR complied with applicable law in considering plaintiff's application to correct his military records and that the BCNR's denial decision is supported by substantial evidence.  And so, for the reasons that follow, the Court **GRANTS** the government's motion for judgment upon the

---

[3] The Court may exercise its discretion to take judicial notice of the certain incontrovertible facts contained in these documents about the uses and effects of Thorazine, consistent with Federal Rule of Evidence 201.  *See* Fed. R. Evid. 201.

administrative record and **DENIES** plaintiff's cross-motion for judgment upon the administrative record.

### 1.      The BCNR Did Not Violate Department Of Defense Guidance

As an initial matter, the record evidence shows that the BCNR did not err by declining to apply the Hagel Memorandum and Kurta Memorandum to plaintiff's application.  Plaintiff argues in his cross-motion for judgment upon the administrative record that the BCNR erred by failing to apply the guidance and standards set forth in the Hagel and Kurta Memoranda to give liberal consideration to his application, because it is undisputed that plaintiff has been diagnosed with PTSD.  Pl. Mot. at 25, 30-31.  A careful review of these memoranda shows, however, that the BCNR appropriately declined to apply this guidance in this case.

The Hagel and Kurta Memoranda require that military correction boards give liberal consideration to veterans' applications petitioning for discharge relief, when the application for relief is based in whole or in part on matters relating to mental health conditions, including PTSD.  Def. Mot. at 19; Pl. Mot. at 23; *see also* AR0186; AR0893.  While plaintiff correctly observes that his claims are related to his PTSD diagnosis, the Court agrees with the government that the Hagel Memorandum does not apply to the application at issue in this case because plaintiff is not challenging the characterization of his discharge from the Navy.

The Hagel Memorandum is entitled "Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder."  AR0184.  As the title of this memorandum suggests, the Hagel Memorandum applies to petitions containing discharge characterization upgrade requests.  AR0186.  In this case, it is undisputed that plaintiff is not seeking to challenge the honorable characterization of his discharge from the Navy.  Def. Mot. at 19-20; Pl. Mot. at 32-35 (showing that plaintiff does not challenge his honorable discharge characterization).  Rather, the complaint makes clear that plaintiff seeks to challenge the Navy's decision to separate him from the military for unsuitability, rather than for unfitness.  Compl. at ¶¶ 39-40.  Because the Court does not read the Hagel Memorandum to apply to unfitness determinations, particularly when they are unrelated to the characterization of discharge, the Court agrees with the government that the BCNR did not err by declining to apply the guidance in the Hagel Memorandum to plaintiff's application.

Plaintiff's argument that the Kurta Memorandum applies to his case, because he is challenging the narrative reason for his honorable discharge from the Navy presents a closer question.  The Kurta Memorandum provides that "[l]iberal consideration will be given to veterans petitioning for discharge relief when the application for relief is based in whole or in part on matters relating to mental health conditions, including PTSD," and that "[u]nless otherwise indicated, the term "discharge" includes the characterization, *narrative reason*, separation code, and re-enlistment code."  AR0893; AR0895 (emphasis supplied.).  The Kurta Memorandum also makes clear that its guidance is "not limited to Under Other Than Honorable Condition discharge characterizations but rather apply to any petition seeking discharge relief including requests to change the narrative reason, re-enlistment codes, and upgrades from General to Honorable characterizations."  AR0895.  And so, plaintiff correctly argues that the Kurta Memorandum requires that the BCNR give "liberal consideration" to applications seeking discharge relief that challenge the narrative reason for a military discharge.  Pl. Mot. at 34; AR0895.

But, plaintiff's contention that he is challenging the narrative reason for his honorable discharge from the Navy in this case is belied by a plain reading of the complaint and plaintiff's application to correct his military records.  The complaint and plaintiff's application before the BCNR make clear that plaintiff seeks to have his military records corrected to show that he was medically retired due to PTSD, with a disability rating of no less than 30% and was thus, *unfit* for duty in 1968.  AR0019-0021; Compl. at Prayer for Relief.  Notably, plaintiff's application before the BCNR states that he seeks to correct his military records to "show that he was found *unfit* and medically retired for psychosis and psychoneuroses."  AR0019 (emphasis supplied); *see also* AR0025 (plaintiff seeks "to correct an error made in 1968 when Airman Doyon should have been granted a military retirement for the mental health impacts of trauma he experienced while in service.").  Because plaintiff seeks a determination regarding his fitness for duty in 1968, the Court is not persuaded that the claim that plaintiff asserts in this case can be properly characterized as a challenge to the narrative reason for his discharge.

Indeed, as the government correctly observes, a determination regarding plaintiff's fitness for duty in 1968 is necessary to award the relief sought in this case.[4]  Def. Resp. at 6; *see also* AR0002 (showing that the BCNR concluded that there is "insufficient evidence of unfitness for continued naval service due to psychosis or psychoneurosis.").  As discussed above, the Court does not read either the Hagel or Kurta Memoranda to apply to such unfitness or disability retirement determinations.  AR0184-0187; AR0892-0897.  And so, the Court concludes that the BCNR did not err by declining to apply those memoranda to plaintiff's claims.

### 2.    The BCNR's Decision Is Supported By Substantial Evidence

The record evidence also shows that the BCNR's decision to deny plaintiff's application was reasonable and supported by substantial evidence.  It is well-established that the Court will not disturb the decision of the BCNR unless the board's decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.  *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998); *Koretsky v. United States*, 57 Fed. Cl. 154, 158 (2003).  Plaintiff has not made such a showing here for several reasons.

First, the record evidence shows that the BCNR reasonably considered the medical opinion of plaintiff's psychiatrist, Dr. Greenzang, and the VA's disability ratings for plaintiff's service-related PTSD, in reviewing plaintiff's application.  Plaintiff argues in his cross-motion that the BCNR erred, because it should not have dismissed the determinations made by Dr. Greenzang and the VA that he suffers from service-related PTSD.  Pl. Mot. at 43-44.  But, a review of the record evidence makes clear that the BCNR appropriately considered this evidence in reaching the decision to deny plaintiff's application.  In this regard, the BCNR acknowledges in its decision that plaintiff was "rated by the Department of Veterans Affairs (VA) for Post-Traumatic Stress Disorder (PTSD) in 2013 and assigned a 50% disability rating . . . [and that plaintiff's disability rating] was later increased to 70% by the VA."  AR0002.  The BCNR also acknowledges in the decision that plaintiff has been diagnosed with PTSD.  *Id*.

The record evidence also shows that the BCNR reasonably determined that Dr. Greenzang's 2017 PTSD diagnosis and the VA's 2014 and 2015 disability ratings occurred "too

---

[4] The government argues that a determination of whether plaintiff was fit for duty is not a judicial province.  Def. Mot. at 16; *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983).

distant in time" from the date of plaintiff's discharge from the Navy to be probative of whether plaintiff was fit for duty in 1968.  In this regard, the BCNR states in its decision that "these opinions were reached "too distant in time" from 1968 and therefore, were less credible than plaintiff's October 28, 1968, diagnosis of "Emotional Unstable Personality #3210, with noted paranoid trait in his personality."  AR0002; AR0234.  The substantial evidence supports the BCNR's determination.

The administrative record makes clear that the VA examined plaintiff for PTSD symptoms more than 40 years after plaintiff was discharged from the Navy.  AR0087-0091 (VA rating decision, Sept. 16, 2014); AR0092-0096 (VA rating decision, Nov. 18, 2015); AR0064-0081 (VA PTSD examination report, June 11, 2014); AR0511-517 (VA PTSD examination report, Oct. 21, 2015).  The record evidence also shows that Dr. Greenzang's medical opinion diagnosing plaintiff with PTSD was issued in 2017, again, more than four decades after plaintiff was discharged.  AR0375-0391 (Dr. Greenzang's opinion, Sept. 13, 2017).

The record evidence also shows that the Navy medical professionals who diagnosed plaintiff with a personality disorder in 1968 personally observed plaintiff at that time.  AR0226-229; AR0234 (showing that two Navy mental health specialists personally observed plaintiff before changing his diagnosis to "Emotional Unstable Personality #3210, with noted paranoid trait in his personality.").  Given the evidence in the administrative record showing the considerable passage of time between plaintiff's discharge from the Navy and his PTSD diagnosis, the substantial evidence supports the BCNR's determination that plaintiff's PTSD diagnosis and VA disability ratings were too remote to be probative of plaintiff's fitness for duty.

The BCNR's finding that plaintiff was properly separated from the Navy for unsuitability due to a preexisting personality disorder is also supported by substantial evidence.  Plaintiff argues that the BCNR's finding lacks evidentiary support, because he was not found to have a personality disorder upon entry to the military and his service record shows adequate performance during the first 12 months of his enlistment.  Pl. Mot. at 38-39.  But, again, there is substantial evidence in the record to support the BCNR's findings.

The record evidence shows that plaintiff went on unauthorized absence from the Navy in May 1968, because he was "suffering from significant emotional torment."  AR0006; Compl. at ¶ 26.  The record evidence also shows that, after plaintiff returned to duty, he was transferred to

Naval Base Subic Bay on August 16, 1968, because he was "expressing fears of possibly doing harm to himself and also expressing admiration for sailors who [had] deserted from his ship." AR0006; AR0226.

Plaintiff's hospital records from this time period also note that plaintiff felt "isolated and different from his shipmates," and that he was "definitely afraid of forming close relationships with his peer groups." *Id.* Plaintiff's medical records similarly show that a medical officer concluded in 1968 that plaintiff suffered from a passive aggressive personality disorder and recommended that he be returned to full duty. AR0229. As discussed above, this diagnosis was subsequently changed on October 28, 1968, to Emotionally Unstable Personality #3210, with noted paranoid traits in his personality. AR0234.

While plaintiff maintains that his medical and service records show that he suffered from service-related PTSD at the time of his discharge from the Navy, the BCNR reasonably determined that this evidence supports a finding that plaintiff had a personality disorder at that time. Given this evidence, the BCNR's conclusion that "there was more than enough evidence of behavior consistent with a personality disorder to support the diagnosis made in 1968" is supported by substantial evidence. AR0002.

The record evidence also shows that the BCNR appropriately weighed and considered the advisory opinions provided by the SMA and the Director of the Secretary of the Navy, Council of Review Boards in reviewing plaintiff's application. AR0002; AR0004-0009. Plaintiff argues that the BCNR's reliance upon these two advisory opinions is misplaced, because the opinions are "inconsistent with the factual record." Pl. Reply at 12-13. But, the record evidence shows that the BCNR properly considered and weighed the probative value of these advisory opinions in reviewing plaintiff's application.

In this regard, the record evidence shows that the BCNR "substantially concurred" with the findings in the SMA's September 20, 2018, advisory opinion and the Director of the Secretary of the Navy, Council of Review Boards' September 24, 2018, advisory opinion to support its determination that "there was no evidence of recurrent psychotic episodes, or a single well-established psychotic episode with existing symptoms or residuals sufficient to interfere with performance of duty in [plaintiff's] case." AR0002; AR0007-0008. These advisory opinions both find that there is little objective evidence in plaintiff's service treatment record

suggesting that a PTSD-related stress reaction made a significant contribution to the circumstances resulting in his administrative separation from the Navy.  AR0008; AR0009. Again, there is substantial evidence in the record to support this finding.

A review of the record evidence shows that the medical record for plaintiff's August 1968 hospitalization at Subic Bay is devoid of any indication that plaintiff was suffering from psychoses or psychoneuroses.  AR0226-0227.  The record evidence also shows that plaintiff returned to duty after this hospitalization on August 30, 1968.  AR0227; AR0229.

The evidentiary record also shows that, during a subsequent October 28, 1968, mental health examination, plaintiff was determined to be "clearly sane and responsible, not amenable to psychiatric treatment within the service," and that he "[did] not warrant hospitalization." AR0234.  In addition, the administrative record shows that plaintiff enrolled in a major university after being discharged from the Navy and that he did not suffer from any documented psychotic episodes for 40 years.  AR0008-0009.  And so, the record evidence shows that the BCNR's determination that there was no objective evidence that plaintiff suffered from recurrent psychotic episodes is supported by substantial evidence.

The Court is also not persuaded by plaintiff's argument that the BCNR erred by giving too much weight to his Naval performance evaluations and to a letter sent to Senator Kennedy by his parents.  Pl. Reply at 14; AR0220-0222; AR0583; AR0603-0606.  Plaintiff correctly observes that these documents do not state that he had a personality disorder.  *See id.*  But, the performance evaluations and letter do provide contemporaneous support for the BCNR's determination that plaintiff was "deeply bothered by [his] service in the Navy."  AR0002.

Notably, plaintiff's performance evaluations state that plaintiff "found it difficult to adjust to Navy life," "[he] has not made a genuine effort to advance on his own," and that plaintiff "seldom displays initiative or interest in his work."  AR0603; AR0606.  The letter sent to Senator Kennedy also states that plaintiff was in a "deeply depressed mood" and that his parents feared that plaintiff would "attempt to jump ship or commit some desperate act for which he will not be responsible in his present state of mind."  AR0222; AR0876.  In its decision, the BCNR states that it relied upon the letter sent to Senator Kennedy to find that plaintiff was "deeply bothered" by his service in the Navy due to his personal convictions against the Vietnam War.  AR0002.  And so, the BCNR reasonably concluded that plaintiff's personal convictions,

rather than the traumatic incidents that plaintiff witnessed during his military service, were the basis for the conduct which led to plaintiff's discharge due to unsuitability.  *Id.*

The Court also observes that plaintiff correctly argues that there is some evidence in the administrative record to support his claim that he suffered from service-related PTSD at the time of his discharge from the Navy.  Pl. Mot. at 41-44; AR0203-0204; AR0206-0209; AR0222; AR0224; AR0375-0390; AR0068-0070; AR0362-0363.  In this regard, it is notable that plaintiff's PTSD diagnosis is not in dispute.  Def. Mot. at 3; Def. Resp. at 8; AR0002 ("the Board does not contest that [plaintiff has] been diagnosed with PTSD").  But, the administrative record in this military pay case shows that the BCNR fully considered this evidence and that the board's decision to deny plaintiff's application to correct his military records is supported by substantial evidence.  Given this, the Court will not substitute its judgment for that of the BCNR when reasonable minds could reach different conclusions about plaintiff's mental health in 1968 based upon the same evidence.  *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986).  And so, the Court **GRANTS** the government's motion for judgment upon the administrative record and **DENIES** plaintiff's cross-motion for judgment upon the administrative record.

## V.      CONCLUSION

In sum, a careful review of the complaint and the administrative record shows that the Court does not possess subject-matter jurisdiction to consider plaintiff's constitutional law claim. The administrative record also shows that the BCNR complied with applicable law in considering plaintiff's application to correct his military records and that the BCNR's decision to deny plaintiff's application was reasonable and supported by substantial evidence.

And so, for the foregoing reasons, the Court:

1.  **GRANTS-in-PART** the government's motion to dismiss;

2.  **DENIES** plaintiff's motion to supplement the administrative record;

3.  **GRANTS** the government's motion for judgment upon the administrative record; and

4.  **DENIES** plaintiff's cross-motion for judgment upon the administrative record.

The Clerk shall enter judgment accordingly.

Each party shall bear its own costs.

**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge